UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEET METAL WORKERS' LOCAL 73 WELFARE FUND BOARD OF TRUSTEES, and JOSEPH OHM, Fund Administrator,<br><br>     Plaintiffs,<br>v.<br><br>ALBERT J. GENOVESE,<br>     Defendant. | FILED: JULY 2 , 2008<br>08CV3794<br>JUDGE MORAN<br>MAGISTRATE JUDGE ASHMAN<br>NF |

## COMPLAINT

Plaintiffs SHEET METAL WORKERS' LOCAL 73 WELFARE FUND BOARD OF TRUSTEES and JOSEPH OHM, by their attorneys, Daley and George, Ltd., complaining against Defendant ALBERT J. GENOVESE, state as follows:

## COUNT I
### (ERISA / EQUITABLE LIEN / RESTITUTION)

1. This action is to enforce the terms of the SHEET METAL WORKERS' LOCAL 73 WELFARE FUND (the "Fund") plan of benefits and for equitable relief arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and, as applicable, under common law.

2. Plaintiff SHEET METAL WORKERS' LOCAL 73 WELFARE FUND BOARD OF TRUSTEES are trustees and fiduciaries of the Welfare Fund, and, as such, entitled to bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The Board of Trustees consists of: Thomas Burek, Robert Schneider, Michael Doyle, John Delano, John P. Harmon, Sr., and Jack Baer. Plaintiff JOSEPH OHM is the Fund Administrator and is similarly a fiduciary of the Welfare Fund.

3.     The Fund is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37). It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union- and employer-appointed trustees pursuant to § 302(c)(5) of the Taft-Harley Act, 29 U.S.C. § 186(c)(5). It is maintained pursuant to collective bargaining agreements. The Fund provides health and related benefit coverage to over 5,000 union employees and their family members, primarily in the Northern District of Illinois, Eastern Division.

4.     The Fund's administrative offices are in the Northern District of Illinois, Eastern Division.

5.     Defendant currently resides, and at all times relevant to this action has resided, in the Northern District of Illinois, Eastern Division. Defendant at all times relevant to this action has worked and participated in the Fund in the Northern District of Illinois, Eastern Division.

6.     At all times relevant to this action, Defendant ALBERT J. GENOVESE was employed in employment governed by collective bargaining agreements between one or more signatory employers and Sheet Metal Worker's International Association Local 73, the agreements providing for health benefits through the Fund.

7.     Defendant ALBERT J. GENOVESE was injured in or about November 1998 in a work related accident (the "Accident").

8.     At all times relevant to this action, Defendant ALBERT J. GENOVESE was and is a participant of the Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). At all times relevant to this action, Defendant ALBERT J. GENOVESE was a Fund participant under the terms of the Fund's Plan Description in effect in at the time of the Accident and thereafter.

9.     At all times relevant to this action, Defendant ALBERT J. GENOVESE was and is a beneficiary of the Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(8). At all times

2

relevant to this action, Defendant ALBERT J. GENOVESE was a Fund beneficiary under the terms of the Fund's Plan Description in effect in at the time of the Accident and thereafter.

10.  At the time of the Accident in or about November 1998 and through present date, medical and related welfare benefits were provided by the Fund to Defendant or paid on behalf of Defendant as a result of the Accident. These benefits took the form of payments made from the Fund's assets. The Fund expended not less than $20,052.21 on behalf of Defendant.

11.  The Plan Description that was in effect at the time of the Accident provides an equitable lien by agreement on any third party recovery, in that it contains a provision that states:

> Effective July 1, 1996, in the event that the Local 73 Welfare Plan pays benefits to or for a covered member, dependent, or the estate thereof as a result of an accident, injury, or illness for which any third party is or may be liable, the Plan has a right of reimbursement from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.
>
> In addition, the Plan will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.
>
> …
>
> The covered member, dependent, or estate is required to immediately inform the Plan in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Plan. The covered member, dependent, or estate is required to cooperate fully with the Fund in connection with the exercise of its rights under this provision and must do nothing to prejudice such rights.
>
> The Plan will not pay fees or costs incurred in connection with any sum recovered unless the Plan has agreed in writing to pay a portion of those fees or costs.
>
> The Plan may, at its option, initiate legal action to secure and protect its rights under this provision.
>
> …In the event that a covered member, dependent, or estate fails to timely inform the Plan of any recovery, the Plan shall have a right of reimbursement from the covered member, dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery. …

A true and correct copy of the above quoted Plan provision is attached as Exhibit A.

12.  Similarly, the Plan Description that was in effect since July 2003 provides an equitable lien by agreement on any third party recovery, in that it contains a provision that states:

> If the Welfare Fund pays benefits to or for you, your dependent, your estate or your dependent's estate as a result of an Accident, injury, or illness for which any third party is or may be liable, the Fund has a right of reimbursement from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.
>
> In addition, the Fund will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.
>
> ...
>
> You, your dependent or estate is required to immediately inform the Fund in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Fund. You, your dependent or estate is required to cooperate fully with the Fund in connection with the exercise of its rights under this provision and must do nothing to prejudice such rights.
>
> The Fund will not pay fees or costs incurred in connection with any sum recovered unless the Fund has agreed in writing to pay a portion of those fees or costs.
>
> The Fund may, at its option, initiate legal action to secure and protect its rights under this provision.
>
> ...In the event that you, your dependent or estate fails to timely inform the Fund of any recovery, the Fund shall have a right of reimbursement from you, your dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery. The Fund Office may also suspend your benefits after giving you a 30-day notice of suspension, if the Fund Office learns that you have received a recovery without making reimbursement to the Fund and if you are not engaged in good faith negotiations to settle the Fund's right to reimbursement.

A true and correct copy of the above quoted Plan provision is attached as Exhibit B.

13.     The Plan Description that was in effect at the time of the Accident and thereafter contains a provision that states:

> Benefits are not provided under the Fund for the following:
>
> 1. Any accidental bodily injury or sickness arising out of or in the course of employment, or which is compensable under any Workers' Compensation or Occupational Disease Act or law.

A true and correct copy of the above quoted Plan provision is attached as Exhibit C.

14.     The Fund has, on more than one occasion, given Defendant notice of its rights and claim to a lien on any recovered funds. A copy of a recent such notice is attached as Exhibit D.

4

15. With respect to the Accident, Defendant pursued a workers compensation claim against his employer (and its insurer). Such claim, or any action for similar relief, is referred to herein as the "Injury Claim." Upon information and belief, recently obtained a settlement in the amount of $26,279.92 (consisting of an award of $15,602.50 and a separate award of $10,677.42 for temporary disability payments). Upon information and belief, the workers compensation settlement contract was entered into on May 28, 2008, and the order was entered on June 18, 2008. As such, the Accident was subject to the Plan exclusion previously referenced.

16. Defendant gave no notice to the Fund of his settlement and recovery in the Injury Claim.

17. Under the terms of the Plan, the Fund is entitled to be reimbursed for any amounts it paid in connection with the Accident, up to the amount of any recovery in the Injury Claim, whether by settlement, judgment, or otherwise.

18. Upon information and belief, Defendant has already received or may receive and/or disburse the proceeds of a recovery from the Injury Claim in violation of the terms of the Plan.

19. Defendant has not reimbursed the Welfare Fund from the proceeds of his recovery from the Injury Claim, or otherwise. Additionally, ERISA preempts any state law restrictions on liens against workers compensation recoveries. The Fund has therefore been damaged in an amount not less than $20,052.21.

20. Upon information and belief, the proceeds of a recovery from the Injury Claim are readily traceable to an identifiable fund in the possession or control of Defendant. Upon information and belief, those proceeds are in the possession of Defendant's attorney.

21. Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs seek relief including, but not limited to, a preliminary injunction and a permanent injunction, and a declaration of rights under the Plan, in the form of an order of judgment, equitable lien, constructive trust,

5

specific performance, and equitable restitution (in an amount not less than $20,052.21) or such other remedy as may be necessary to enforce ERISA and the terms of the Plan.

22. Plaintiffs are entitled to a preliminary injunction enjoining Defendant, and all those acting in concert or participating with them, including their counsel, from continuing to violate the terms of the Plan and from doing so in the future, including disposing of any amounts received in the Injury Claim, pending the final determination by this Court.

23. Plaintiffs have no adequate remedy at law.

24. Absent intervention by the Court, Plaintiffs will suffer immediate and irreparable harm. If Defendant is able to place any recovery from the Injury Claim beyond the reach of this Court, then Defendant may deprive the Court of the ability to impose any remedy in favor of the Fund.

25. Plaintiffs are likely to succeed in its claim that the Fund receive restitution from any settlement, judgment, insurance proceeds, or other recovery in the Injury Claim, for amounts it has paid attributable to the Accident. At a minimum, there are sufficiently serious questions going to the merits to provide a fair ground for litigation and the balance of hardships tips decidedly toward Plaintiffs.

26. The grant of the requested relief will not result in irreparable harm to Defendant. Accordingly, the balance of the hardships again favor the Plaintiffs.

27. Plaintiffs are entitled to their attorney fees and costs in this action pursuant to the above quoted plan provision and ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiffs prays that:

A. Judgment be entered against Defendant in favor of Plaintiffs.

B. Defendant be ordered to pay and/or make restitution to Plaintiffs in the amount of $20,052.21, plus any additional amount shown to be due.

C.  An order be entered declaring that the proceeds are subject to an equitable lien, constructive trust, and granting such other equitable relief as may be appropriate to assure that the Defendant is not unjustly enriched and that the Fund receives restitution from any settlement, judgment, insurance proceeds, or other recovery in the Injury Claim, for amounts paid in connection with the Accident.

D.  An order be entered granting a preliminary injunction and permanent injunction providing the above-requested relief and enjoining Defendant, his agents and all those acting in concert or participating with him, including his counsel, from violating the terms of the Plan and ERISA.

E.  An order be entered declaring that the Fund has no obligation to pay future benefits if Defendant does not comply with the Plan.

F.  Plaintiffs be awarded their attorneys fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

G.  The Court grant such other and further relief as be just under the circumstances.

## COUNT II
(Breach of Contract)

1.  This action is to enforce the terms of the SHEET METAL WORKERS' LOCAL 73 WELFARE FUND (the "Fund") plan of benefits.

2.  This Count II arises from a common nucleus of operative facts with Count I and is pendant to that count.

3.  Plaintiff SHEET METAL WORKERS' LOCAL 73 WELFARE FUND BOARD OF TRUSTEES are trustees and fiduciaries of the Welfare Fund, and, as such, entitled to bring this action. Plaintiff JOSEPH OHM is the Fund Administrator and is similarly a fiduciary of the Welfare Fund.

4. The Fund is an employee welfare benefit plan. It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union- and employer-appointed trustees. It is maintained pursuant to collective bargaining agreements. The Fund provides health and related benefit coverage to over 5,000 union employees and their family members, primarily in the Northern District of Illinois, Eastern Division.

5. The Fund's administrative offices are in the Northern District of Illinois, Eastern Division.

6. Defendant currently resides, and at all times relevant to this action has resided, in the Northern District of Illinois, Eastern Division. Defendant at all times relevant to this action has worked and participated in the Fund in the Northern District of Illinois, Eastern Division.

7. At all times relevant to this action, Defendant ALBERT J. GENOVESE was employed in employment governed by collective bargaining agreements between one or more signatory employers and Sheet Metal Worker's International Association Local 73, the agreements providing for health benefits through the Fund.

8. Defendant ALBERT J. GENOVESE was injured in or about November 1998 in a work related accident (the "Accident").

9. At all times relevant to this action, Defendant ALBERT J. GENOVESE was a Fund participant under the terms of the Fund's Plan Description in effect in at the time of the Accident and thereafter.

10. At all times relevant to this action, Defendant ALBERT J. GENOVESE was a Fund beneficiary under the terms of the Fund's Plan Description in effect in at the time of the Accident and thereafter.

11. At the time of the Accident in or about November 1998 and through present date, medical and related welfare benefits were provided by the Fund to Defendant or paid on behalf of

8

Defendant as a result of the Accident. These benefits took the form of payments made from the Fund's assets. The Fund expended not less than $20,052.21 on behalf of Defendant.

12. The Plan Description that was in effect at the time of the Accident contains a provision that states:

> Effective July 1, 1996, in the event that the Local 73 Welfare Plan pays benefits to or for a covered member, dependent, or the estate thereof as a result of an accident, injury, or illness for which any third party is or may be liable, the Plan has a right of reimbursement from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.
>
> In addition, the Plan will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.
>
> …
>
> The covered member, dependent, or estate is required to immediately inform the Plan in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Plan. The covered member, dependent, or estate is required to cooperate fully with the Fund in connection with the exercise of its rights under this provision and must do nothing to prejudice such rights.
>
> The Plan will not pay fees or costs incurred in connection with any sum recovered unless the Plan has agreed in writing to pay a portion of those fees or costs.
>
> The Plan may, at its option, initiate legal action to secure and protect its rights under this provision.
>
> …In the event that a covered member, dependent, or estate fails to timely inform the Plan of any recovery, the Plan shall have a right of reimbursement from the covered member, dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery. …

A true and correct copy of the above quoted Plan provision is attached as Exhibit A.

13. Similarly, the Plan Description that was in effect since July 2003 contains a provision that states:

> If the Welfare Fund pays benefits to or for you, your dependent, your estate or your dependent's estate as a result of an Accident, injury, or illness for which any third party is or may be liable, the Fund has a right of reimbursement from any settlement, judgment, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.

9

> In addition, the Fund will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.
>
> ...
>
> You, your dependent or estate is required to immediately inform the Fund in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Fund. You, your dependent or estate is required to cooperate fully with the Fund in connection with the exercise of its rights under this provision and must do nothing to prejudice such rights.
>
> The Fund will not pay fees or costs incurred in connection with any sum recovered unless the Fund has agreed in writing to pay a portion of those fees or costs.
>
> The Fund may, at its option, initiate legal action to secure and protect its rights under this provision.
>
> ...In the event that you, your dependent or estate fails to timely inform the Fund of any recovery, the Fund shall have a right of reimbursement from you, your dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery. The Fund Office may also suspend your benefits after giving you a 30-day notice of suspension, if the Fund Office learns that you have received a recovery without making reimbursement to the Fund and if you are not engaged in good faith negotiations to settle the Fund's right to reimbursement.

A true and correct copy of the above quoted Plan provision is attached as Exhibit B.

14. The Plan Description that was in effect at the time of the Accident and thereafter contains a provision that states:

> Benefits are not provided under the Fund for the following:
>
> 1. Any accidental bodily injury or sickness arising out of or in the course of employment, or which is compensable under any Workers' Compensation or Occupational Disease Act or law.

A true and correct copy of the above quoted Plan provision is attached as Exhibit C.

15. With respect to the Accident, Defendant pursued a workers compensation claim against his employer (and its insurer). Such claim, or any action for similar relief, is referred to herein as the "Injury Claim." Upon information and belief, recently obtained a settlement in the amount of $26,279.92 (consisting of an award of $15,602.50 and a separate award of $10,677.42 for temporary disability payments). Upon information and belief, the workers compensation settlement

contract was entered into on May 28, 2008, and the order was entered on June 18, 2008. As such, the Accident was subject to the Plan exclusion previously referenced.

16. Defendant gave no notice to the Fund of his settlement and recovery in the Injury Claim.

17. Under the terms of the Plan, the Fund is entitled to be reimbursed for any amounts it paid in connection with the Accident, up to the amount of any recovery in the Injury Claim, whether by settlement, judgment, or otherwise.

18. Upon information and belief, Defendant has already received or may receive and/or disburse the proceeds of a recovery from the Injury Claim in violation of the terms of the Plan.

19. Defendant has not reimbursed the Welfare Fund from the proceeds of his recovery from the Injury Claim, or otherwise. The Fund has therefore been damaged in an amount not less than $20,052.21.

**WHEREFORE**, Plaintiffs pray that:

A. Judgment be entered against Defendant in favor of Plaintiffs.

B. Defendant be ordered to pay and/or make restitution to Plaintiffs in the amount of $20,052.21, plus any additional amount shown to be due.

C. Plaintiffs be awarded their attorneys fees and costs.

D. The Court grant such other and further relief as be just under the circumstances.

DALEY AND GEORGE, LTD.
20 S. Clark St., Suite 400
Chicago, IL 60603
(312) 726-8797

Respectfully submitted,
SHEET METAL WORKERS' LOCAL 73
WELFARE FUND
BOARD OF TRUSTEES and JOSEPH OHM

By: _____
One of Their Attorneys

11

# SHEET METAL WORKERS' LOCAL 73
# WELFARE FUND

Please read the claim form carefully. It is important for a member to know that **ASSIGNMENT OF BENEFITS** means that if a member signs in this space, the claim will be processed and the check will be sent directly to the provider (a member's doctor, anesthetist, etc.). Please be aware that once a member assigns benefits, the Fund has no alternative but to forward the check to the provider.

### 4.12. Subrogation

Effective January 1, 1996, in the event that the Local 73 Welfare Plan pays benefits to or for a covered member, dependent, or the estate thereof as a result of an accident, injury, or illness for which any third party is or may be liable, the Plan shall have a right of reimbursement from any settlement, judgement, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.

In addition, the Plan shall have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.

The covered member, dependent, or estate may be required to execute a written subrogation agreement acknowledging the Plan's rights under this provision, and the Plan may withhold benefits until such agreement is signed.

The covered member, dependent, or estate is required to immediately inform the Plan in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Plan. The covered member, dependent, or estate is required to cooperate fully with the Plan in connection with the exercise of its rights under this provision and shall do nothing to prejudice such rights.

The Plan will not pay fees or costs incurred in connection with any sum recovered unless the Plan shall have agreed in writing to pay a portion of those fees or costs.

The Plan may, at its option, initiate legal action to secure and protect its rights under this provision.

In the event that reimbursement is not made as provided above, the Plan has the right to withhold any future benefits to which the covered member, dependent, or estate shall be entitled to receive until the Plan has been reimbursed. In the event that a covered member, dependent, or estate fails to timely inform the Plan of any recovery, the Plan shall have a right of reimbursement from the covered member, dependent, or estate for any and all benefits paid and for costs of suit including payment of reasonable attorney fees, regardless of the amount of the actual recovery.

### 4.13. Qualified Medical Child Support Order (QMCSO)

A Qualified Medical Child Support Order (QMCSO) is a court order that requires a member to provide medical coverage for his children (called alternate recipients) in situations involving divorce, legal separation or a paternity dispute.

A QMCSO requires the Fund to cover an alternative recipient who might not otherwise be eligible for coverage. This Plan provides benefits according to the requirements of the QMCSO. The Plan Administrator will notify affected participants and alternate recipient

19



EXHIBIT A

**4.9 SUBROGATION**

If the Welfare Fund pays benefits to or for you, your dependent, your estate or your dependent's estate as a result of an accident, injury, or illness for which any third party is or may be liable, the Fund has a right of reimbursement from any settlement, judgement, insurance proceeds, no-fault automobile insurance payments, or other recovery, for any and all benefits paid in connection with such injury and illness up to the amount of recovery.

In addition, the Fund will have a lien upon any such recovery in the amount of all benefits paid up to the amount of recovery.

You, your dependent or estate is required to execute the Fund's written subrogation agreement acknowledging the Fund's rights under this provision and the Fund may withhold benefits until such agreement is signed. The Fund has its own form of written subrogation agreement that you will be required to sign.

You, your dependent or estate is required to immediately inform the Fund in writing of any legal action or any recovery that arises subsequent to the payment of benefits by the Fund. You, your dependent or estate is required to cooperate fully with the Fund in connection with the exercise of its rights under this provision and must do nothing to prejudice such rights.

The Fund will not pay fees or costs incurred in connection with any sum recovered unless the Fund has agreed in writing to pay a portion of those fees or costs.

The Fund may, at its option, initiate legal action to secure and protect its rights under this provision.

In the event that reimbursement is not made as provided above, the Fund has the right to withhold any future benefits that you, your dependent or estate may be entitled to receive until the Fund has been reimbursed. In the event that you, your dependent or estate fails to timely inform the Fund of any recovery, the Fund will have a right of reimbursement from you, your dependent or estate for any and all benefits paid and for costs of suit, including payment of reasonable attorney fees, regardless of the amount of the actual recovery. The Fund Office may also suspend your benefits after giving you a 30-day notice of suspension, if the Fund Office learns that you have received a recovery without making reimbursement to the Fund and if you are not engaged in good faith negotiations to settle the Fund's right to reimbursement.

**CLAIM FILING PERIOD**

[Two]-year period beginning with the date you incur charges for medical [in]cluding wellness, hearing, optical services and accident and sickness) [whic]h you must file a claim for reimbursement of the charges. There is a one-year period beginning with the date you incur charges for prescription drug benefits and dental claims during which you must file a claim for reimbursement of the charges. **IF YOU FILE YOUR CLAIM AFTER THIS TWO-YEAR PERIOD OR ONE-YEAR PERIOD IN THE CASE OF PRESCRIPTION DRUG OR DENTAL BENEFITS, NO REIMBURSEMENT WILL BE MADE.**

**4.11 ASSIGNMENT OF BENEFITS**

Please read the claim form carefully. It is important for you to know that ASSIGNMENT OF BENEFITS means that if you sign in this space, the claim will be processed and the check will be sent directly to the provider (your doctor, anesthetist, etc.). Please be aware that once you assign benefits, the Fund has no alternative but to forward the check to the provider. For dental claims, if the dentist is a DPO dentist or is participating in DeltaPremier, Delta Dental will pay him or her. If the dentist is not participating in either program, Delta Dental will usually send payment to you, unless the Delta Dental Plan in the state where treatment is rendered allows an assignment of benefits and you assign payment to the dentist.

**4.12 QUALIFIED MEDICAL CHILD SUPPORT ORDER (QMCSO)**

A Qualified Medical Child Support Order (QMCSO) is a court order that requires you to provide medical coverage for your children (called alternate recipients) in situations involving divorce, legal separation or a paternity dispute.

A QMCSO requires the Fund to cover an alternative recipient who might not otherwise be eligible for coverage. This Fund provides benefits according to the requirements of the QMCSO. The Fund Administrator will notify you and any alternate recipient if a QMCSO is received.

EXHIBIT B

**SHEET METAL WORKERS' LOCAL 73**
**WELFARE FUND**

## SECTION 14

## GENERAL EXCLUSIONS AND LIMITATIONS

Benefits are not provided under the Plan for the following:

1. Any accidental bodily injury or sickness arising out of or in the course of employment, or which is compensable under any Workers' Compensation or Occupational Disease Act or law.

2. Any treatment or service not prescribed by the legally qualified physician or surgeon to be medically necessary.

3. Any charges made by a Hospital unless the hospitalization is recommended and approved by a physician.

4. Rhinoplasty and cosmetic surgery except that which is necessary to correct birth defects, or for the prompt repair of an accidental bodily injury occurring while the individual is covered.

5. Dental care and treatment except (a) that necessitated by accidental bodily injury, occurring while covered, to sound, natural teeth, or (b) as specifically provided under the Dental Expense Benefits.

6. Eye examinations for the purpose of prescribing corrective lenses or for the fitting of glasses.

7. Eye glasses except as provided under the Optical Benefits. However, the first pair of glasses purchased after cataract surgery is paid under Major Medical.

8. Routine physical examinations and immunizations, except routine child and adolescent immunizations until age 16. However, inpatient nursery charges and physician office visits are covered for a newborn child of an eligible employee during the child's first year of life. A child born to an eligible dependent child of an eligible employee will be covered for prenatal and delivery expenses incurred as a result of the birthing process only.

9. An accidental bodily injury or sickness caused by war, or by any act of war, declared or undeclared or by participating in a riot or as the result of the commission of a felony by an eligible person.

10. Any military-related services provided by a U. S. Government Hospital or in any other Hospital operated by a government unit, unless a charge is made that the eligible person is legally required to pay without regard to the existence of this coverage or unless the Plan is required to pay under Federal regulations.

11. Any intentionally self-inflicted bodily injury or suicide.

12. Charges made by a physician, registered nurse (R.N.), licensed practical nurse or physiotherapist if such physician, registered nurse, licensed practical nurse or physiotherapist is related to the eligible person or ordinarily resides with the

43

EXHIBIT
C

only dispense the amount of medication your physician has prescribed up to a 90-day supply. Show your physician the prescription drug benefit brochure to help your physician write a prescription for this program.

2. Complete the Mail Service Order Form/Patient Profile.
3. Mail the written prescription, the profile, the order form and your co-payment to Caremark in the pre-addressed envelope. The co-payment for each prescription order is shown in the Schedule of Benefits in Section 3. If you need assistance determining the co-payment amount, call Caremark at 1-800-776-1465 or visit their website at www.caremark.com.

You will receive refill labels (if refills remain) and a new order form in your prescription package. To obtain a refill order, simply affix the refill label to the back of the order form and send it to Caremark. If you have no refills remaining or if your prescription has expired, contact your physician for a new written prescription to send to Caremark.

If you have a question about your prescription, call Caremark at 1-800-776-1465. Customer Service Representatives will be available to answer questions weekdays from 7:30 a.m. - 9:00 p.m. and Saturdays from 8:00 a.m. - 12:00 p.m. Central Standard Time.

**14.3 PRESCRIPTION DRUG EXCLUSIONS AND LIMITATIONS**

Benefits are not payable under this Prescription Drug Benefit for:

1. Medicines or drugs obtainable without a physician's prescription, except insulin,
2. All forms of contraceptives, including medicines and devices,
3. Medications used for cosmetic purposes, including Vitamin A derivatives (retinoids) for dermatological use (i.e. Retin A, Renova),
4. Vitamins and nutritional supplements,
5. Smoking deterrents (except as provided under the Wellness Benefit),
6. Fertility drugs (except as provided under the Infertility Benefit),
7. Viagra and other erectile dysfunction drugs,
8. Anabolic steroids,
9. Antiviral drugs used for influenza (flu) treatment or prevention,
10. Weight control or drugs or anorexiants, except those used for treatment of children with attention deficit disorder (ADD) or individuals with narcolepsy, and
11. Serum allergy antigen solutions.

## GENERAL EXCLUSIONS AND LIMITATIONS

Benefits are not provided under the Fund for the following:

1. Any accidental bodily injury or sickness arising out of or in the course of employment, or which is compensable under any Workers' Compensation or Occupational Disease Act or law.
2. Any treatment or service not prescribed by the legally qualified physician or surgeon to be medically necessary.
3. Any charges made by a Hospital unless the hospitalization is recommended and approved by a physician.
4. Surgery or medical treatment to improve or preserve physical appearance, but not physical function. Cosmetic Surgery or treatment includes, but is not limited to: removal of tattoos, breast augmentation, or other medical or surgical treatment intended to restore or improve physical appearance. The Fund does cover medically necessary reconstructive procedures which are necessary to correct damage caused by congenital birth defect or an accidental injury.
5. Dental care and treatment except (a) that necessitated by accidental bodily injury, occurring while covered, to sound, natural teeth, or (b) as specifically provided under the Dental Expense Benefits.
6. Eye examinations and eye glasses except as provided under the Optical Benefits. However, the first pair of glasses purchased after cataract surgery is paid under the Major Medical benefits.
7. Routine physical examinations and immunizations, except as specifically provided under the Wellness Benefits, and routine child and adolescent exams and immunizations until age 16.
8. An accidental bodily injury or sickness caused by war, or by any act of war, declared or undeclared or by participating in a riot or as the result of the commission of a felony by an eligible person.
9. Expenses for services provided to the covered individual under any government-provided plan or program (including, without limitation, TRICARE (formerly known as CHAMPUS) and VA programs) established under the laws or regulations of any government, including the federal, state, or local government or the government of any other political subdivision of any country; or under any plan or program in which any government participates other than as an Employer, unless the governmental program provides otherwise.
10. Expenses incurred by any covered individual arising from an attempt at suicide or from a self-inflicted injury or illness, including complications thereof, unless the attempt arises as a result of a physical or mental health condition.
11. Charges made by a physician, registered nurse (R.N.), licensed practical nurse (L.P.N.) or physiotherapist if such physician, registered nurse, licensed practical

LAW OFFICES
# DALEY AND GEORGE, LTD.

TWO FIRST NATIONAL PLAZA
SUITE 400
20 SOUTH CLARK STREET
CHICAGO, ILLINOIS 60603-1835

MICHAEL DALEY
JOHN J. GEORGE
DENNIS J. AUKSTIK
—
ROBERT T. OLESZKIEWICZ
CHRIS A. LEACH
RICHARD A. TOTH
KATHLEEN A. DUNCAN
JILL P. DENHAM

TELEPHONE
(312) 726-8797

FACSIMILE
(312) 726-8819

**SENT BY REGULAR AND CERTIFIED MAIL**

April 8, 2008

Mr. Jeffrey L. Whitcomb
Law Offices of Jeffrey L. Whitcomb
100 S. York Road, Suite 200
Elmhurst, IL 60126

      Re:  Sheet Metal Workers' Local 73 Welfare Fund
            Albert Genovese; 00 WC 33875

Dear Mr. Whitcomb:

As you will recall, this office represents the Sheet Metal Workers' Local 73 Welfare Fund. I am under the understanding that you may be close to a settlement in the workers compensation action you are pursuing on behalf of Mr. Genovese.

As I think you know, the Local 73 Welfare Plan excludes coverage for any injury or sickness that is compensable under any worker's compensation law. The Welfare Plan also provides for a lien and right of reimbursement from any recovery from a third party. Additionally, Mr. Genovese signed a reimbursement agreement with the Fund. It has been the policy of the Welfare Fund's Board of Trustees to seek reimbursement from any third-party recovery of amounts paid out by the Welfare Fund, less approved fees and expenses.

The Welfare Plan also provides that:

> "In the event that reimbursement is not made as provided above, the Fund has the right to withhold any future benefits that you, your dependent or estate may be entitled to receive until the Fund has been reimbursed. ... The Fund Office may also suspend your benefits after giving you a 30-day notice of suspension, if the Fund Office learns that you have received a recovery without making reimbursement to the Fund and if you are not engaged in good faith negotiations to settle the Fund's right to reimbursement."

Based on the Welfare Fund's rights as outlined above, the Welfare Fund asserts its lien and reimbursement rights.

Further, I would add that the Fund claims its lien and reimbursement rights through its plan document and ERISA, (29 U.S.C. § 1132(a)(3); <u>Sereboff v. Mid Atlantic Medical Services, Inc.</u>, 126 S.Ct. 1869 (2006)), not under state law, and invoke ERISA to preempt any state law defenses (including but not limited to those relating to liens on workers compensation recoveries).


EXHIBIT A

Mr. Jeffrey L. Whitcomb
April 8, 2008
Page 2

Kindly note that if a participant or beneficiary obtains a recovery and fails to notify and reimburse the Welfare Fund, he or she is subject to a suspension of health insurance.

**Again, I am writing again to assert the Fund's claim to lien and reimbursement rights in the amount of $20,052.21, and to demand that any recovered funds are kept in a segregated account pending the satisfaction or other resolution of the Fund's claim.**

Without wanting to give offense, I also customarily remind attorneys that they can be held personally liable for the wrongful payout of funds subject to a lien. See, e.g., Western States Ins. Co. v. Louis E. Olivero & Associates, 283 Ill. App. 3d 307 (3d Dist. 1996) (upholding a conversion claim against an attorney); Cirrincione v. Johnson, 184 Ill.2d 109 (1998) (same).

Thank you for your attention to this important matter.

Sincerely,

Richard A. Toth

cc:  Rose Cassara, Fund Office
     Alice Preibe, Fund Office